FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

NOV ? ? 2011

BY MARK JONES, CLERK

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA, | : | REPORT AND RECOMMENDATIONS |
|---|---|---|
| Plaintiff, | : | |
| v. | : | |
| KENNETH NEILSON | : | No. 2:09-cr-00286-TS |
| Defendant. | : | |
| | : | |

Before the Court is defendant Neilson's Motion to Withdraw Guilty Plea and Continue Sentencing Hearing (File Entry #108). After thorough review and consideration of the parties' pleadings, the Court recommends that the motion be DENIED.

## PROCEDURAL HISTORY

The indictment in this case was filed on May 13, 2009. The defendant has consistently and repetitively sought to delay the proceedings in this case since that filing:

After three continuances of the initial appearance and arraignment due to his inability or unwillingness to secure counsel, on July 20, 2009 the Court entered a not guilty plea on behalf of the defendant over his objection and his request for yet another continuance.

Since then the trial in this case has been continued seven times; five times on motions by the defendant (twice stipulated to by the government), once because of an aborted change of plea,

1

and once because of a change of defense counsel. Finally, on April 7, 2011, two business days before his five-day trial was to begin, the defendant changed his plea to guilty.

On October 27, 2011, nearly seven months after pleading guilty and only after receiving the draft Presentence Report and realizing that a stiff sentence was being contemplated,[1] the defendant filed the present Motion to Withdraw Guilty Plea ("Motion to Withdraw").

The Motion to Withdraw is based on an accompanying one-page Affidavit in which the defendant states that (1) he maintains his innocence, (2) he understood that the government would not be seeking any prison time and that his plea agreement was for probation only, (3) the offense conduct to which he agreed in his Statement in Advance of Plea constituted mistakes on his part, rather than crimes, and (4) his guilty plea was not voluntary, but was coerced by his attorneys.

## ANALYSIS

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure permits withdrawal of a guilty plea before sentencing only if the defendant can sustain the burden of demonstrating a "fair and just reason" for withdrawal.

While citing different cases for the same proposition, both parties agree that there is a seven-part test the court must follow in determining whether or not to allow the withdrawal of a guilty plea, namely: (1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing the defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources." *United States v. Gordon,* 4 F.3d 1567 (10th Cir. 1993)

---

[1] Pre-Trial Services calculated the defendant's sentencing range by starting with a base offense level of 20 (reflecting a tax loss of more than $400,000), adding 2 levels because the offense involved sophisticated means, and subtracting 3 levels for acceptance of responsibility, resulting in a total offense level of 19. The defendant's criminal history score of 1 equates to Criminal History Category I. These computations place the defendant in guideline Zone D, which does not authorize probation, and result in an effective guidelines range of 30-36 months.

The court agrees with the majority of the arguments put forth by the prosecution, and finds as follows:

1. <u>Assertion of Innocence.</u> A mere assertion of innocence is insufficient to justify withdrawal of a guilty plea. Were it not so, "withdrawal would effectively be an automatic right." *United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975). "[W]ithdrawal is not automatically granted simply because the defendant now decides he would rather go to trial." *Id.* at 226. The Court in *Barker* further held:

> Were the withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but a "grave and solemn act" which is "accepted only with care and discernment." (Citation omitted). It follows that a court, in addressing a withdrawal motion, must consider not only whether the defendant has asserted his innocence, but also the reason why the defenses now presented were not put forward at the time of original pleading.

*Id.* See also *United States v. Cervantes*, 115 Fed.Appx. 1, 7 (10th Cir. 2004).

In addition to an assertion of innocence, a legally cognizable defense is required, together with a credible a reason why the new defense was not put forward at the time the guilty plea was accepted. In this case the defendant has failed to allege a legally cognizable defense. He does not dispute that he committed the offense underlying the indictment. Instead, he asserts that he committed the conduct due to "mistakes and misunderstandings." Affidavit of Defendant, paragraphs 4 and 6. He concedes that he has broken the law, but asserts for the first time at this late date that he lacked the criminal intent required to convict him of the crime.

Such an assertion is unfounded and unreasonable. In paragraph 11 of the Statement in Advance of Plea ("SAP") the defendant gave his own account of the offense and his conduct as follows:

3

> I fully accept all responsibility for a violation of 26 U.S.C. § 7212(a) in that during the period alleged in Count Two of the Indictment I did corruptly endeavor to obstruct and impede the due administration of the Internal Revenue laws by using third parties to accomplish the transfer of property to trusts, reporting financial information to the IRS that was different from the information I reported to lenders from whom I sought loans; mailing frivolous letters to the IRS as part of a scheme wherein I sought to "redeem" the value of my birth certificate by stamping "Accepted for Value" on documents sent to me by the IRS and attaching them to such letters; presenting "Bills of Exchange" as payment of my tax debts; declaring that I was a sovereign citizen of the State of Utah and not subject to the laws of the United States; and sending harassing documents to the IRS seeking personal information on all IRS employees.

Further, at the change of plea hearing on April 7, 2011, the Court read aloud the same description of the offense conduct from the SAP. The Court then asked the defendant, "Is the statement I just read to you a completely true statement?" The defendant replied, "Yes, it is." (Transcript of Change of Plea Hearing ("Tr."), pp. 15-16.)

By their nature, the acts admitted by the defendant are acts that cannot be committed by mistake or misunderstanding. Most of them required such a high degree of planning and forethought and employed such sophisticated and elaborate means of implementation that to characterize them as mistakes is illogical. They are inherently intentional acts the effect of which was to impede and obstruct the due administration of the Internal Revenue laws. By continuing to accept responsibility for these acts the defendant also unavoidably accepts their legal consequences. Although he proclaims his innocence, these acts alone are sufficient to convict him of the crime charged, unless he was to have labored under some mental defect that is not alleged here.

Mere mistake or misunderstanding do not amount to a legally cognizable defense and the defendant should not be allowed to withdraw his plea. As the Court stated in *Barker,* "If the movant's factual contentions, when accepted as true, make out no legally cognizable defense to

4

the charges, he has not effectively denied his culpability, and his withdrawal motion need not be granted." 514 F.2d, at 220.

It would appear that the defendant moved to withdraw his guilty plea only after reading the draft Presentence Report and becoming dissatisfied with the length of the sentence proposed in the Report. However, "It is well established that a defendant's dissatisfaction with the length of his sentence generally is an insufficient reason to withdraw a plea." *United States v. Walters*, 269 F.3d 1207, 1217 (10th Cir. 2001), citing *United States v. Elias*, 937 F.2d 1514, 1520 (10th Cir. 1991). See also, *United States v. Cervantes*, supra, at 8 ("Cervantes' displeasure with the unanticipated severity of his sentence . . . is not a 'fair and just' reason to withdraw from a guilty plea."). Under these circumstances the defendant has failed to meet his burden of giving a fair and just reason for withdrawal.

Moreover, the defendant was specifically advised by the Court that he would not be allowed to withdraw his plea if the ultimate sentence was greater than he expected. The following colloquy occurred between the Court and the defendant at the change of plea hearing:

> THE COURT: . . . Mr. Neilson, do you understand that if you do plea guilty here in a few minutes, that thereafter a presentence report will be compiled by the probation office? That probation officer will calculate a guideline range, which is a range of months from a low end to a high end, based upon the information that she will obtain during the course of preparing that presentence report.
>
> It's likely - - I should say it's possible that the sentence you receive from this Court might be within that guideline range, that range of months that I just indicated, but I am not obligated to impose a sentence upon you within that guideline range. Have the right to impose a sentence that is either higher or lower than that suggested by that range.
>
> The reason why I mention this is I'm assuming that you have had conversations with Mr. Cramer, perhaps Mr. Wilson and Mr. Killpack, wherein they have attempted to estimate for you what sentence they think you will receive. It's possible that they are accurate in the assumptions that they would have relied on, but it's also possible that you may receive a very different

sentence from this Court from what you expect as you sit before me here this afternoon. Do you understand that, Mr. Neilson?

THE WITNESS: I do.

THE COURT: Do you also understand that once I have accepted your guilty plea, that thereafter you will remain bound by that guilty plea, and by that I mean you will not be allowed to withdraw the plea even if the sentence that I impose upon you is very different from what you expect? Do you understand that?

THE WITNESS: I do.

Tr., pp.16-17.

For all of the reasons set forth above, the defendant's assertion of innocence lacks sufficient weight to justify withdrawal of his guilty plea.

2-4, <u>Prejudice to the government, inconvenience to the court, and waste of judicial resources.</u> These three factors are considered together because most court decisions on plea withdrawal motions hold that withdrawal of a plea on the eve of trial, after the government has completed its trial preparations, prejudices the government, inconveniences the court, and wastes judicial resources and weighs against withdrawal. In *United States v. Hernandez*, 277 Fed.Appx. 775, 777 (10th Cir. 2008), the Court held that where the defendant delayed filing his motion to withdraw for five and one-half months, "granting Mr. Hernandez's motion would likely prejudice the government by forcing it to repeat much of its trial preparation, substantially inconvenience the court, and waste judicial resources." All of these factors are present in the case at hand. As noted at the beginning of this recommendation and Report, the defendant has consistently sought to delay and prolong these proceedings, resulting in continual duplication of hearings and trials inconveniencing the court and wasting judicial resources.

5. <u>Delay.</u> As *Barker* makes clear, courts must consider not only *whether* the defendant asserts his innocence and raises legally cognizable defenses, "but also *why the defenses now presented were not put forward at the time of original pleading.*" See also *United States v. Cervantes*, 115 Fed.Appx. 1 (10th Cir. 2004), at 7 (italics added). Where, as here, the guilty plea was properly entered and the motion to withdraw is significantly delayed, a substantial reason for delay is required. *United States v. Barker,* supra, at 221. In the present case not only has the defendant failed to give a substantial reason for a delay of nearly seven months in filing his Motion to Withdraw, he has given *no reason whatsoever*.

6. <u>Defendant's assistance of counsel.</u> The defendant has always maintained that he had effective assistance of counsel and that factor in the *Gordon* test weighs in favor of denying the Motion to Withdraw. The record shows that the defendant enjoyed the able assistance of not only one, but three highly qualified defense lawyers. At the change of plea hearing he acknowledged having had sufficient time to discuss his plea with counsel, that he and counsel had covered everything, and that he was satisfied with the representation he had received from his lawyers. Tr., pp. 5, 11, 16-17. Mr. Cramer's suggestion in the Motion to Withdraw that he and the defendant have had disputes and that Mr. Neilson may not have always enjoyed close assistance of counsel falls short of establishing a fair and just reason for withdrawal of the plea. Occasional disagreements between attorney and client are common as a case progresses and as counsel advises a layman client on the proceedings of the court and the application of the law.

7. <u>Whether the plea was knowing and voluntary.</u> In paragraph three of his Affidavit the defendant states "it was my understanding that the government would not be seeking any prison time and that it was an agreement for probation only." These assertions are contradicted by the

7

record on this subject. First, paragraph 2(a) of the SAP makes it clear the maximum penalty in this case includes a prison sentence of three years. The defendant also acknowledges in paragraph three of the SAP that "the final calculation of my sentence by the Court may differ from any calculation the United States, my attorney, or I may have made, and I will not be able to withdraw my plea if this occurs." In the same paragraph the defendant also acknowledges that he has discussed these matters with his attorney. Second, in paragraph 12B of the SAP the government agrees only to dismiss Count One of the Indictment, recommend a decrease of the defendant's offense level for acceptance of responsibility, and recommend a sentence at the low end of the applicable guidelines range. There is no reference to probation. Agreement to recommend a sentence at the low end of the guidelines range is inherently inconsistent with an agreement for probation only.

Furthermore, at the change of plea hearing the Court asked the government's attorney to recite the government's agreement in the SAP and he did so. Tr., pp. 12-14. At the same hearing the Court also asked the defendant: "Has anyone promised you something that is not contained in the plea agreement?" The defendant answered "No." The quotations above from the change of plea hearing make it very clear that at the time of his plea the defendant understood and accepted the possibility of a prison sentence. If he thought the government had agreed to probation, certainly it would have been raised in some way during that hearing. It was not. Third, although the record clearly contemplates the possibility of prison time, nowhere in the record has the government said anything *seeking* prison time. The government's only allusion to prison time either side has referred to is in the Government's Memorandum in Response to Defendant's Objection to Pre-Sentence Report and Motion to Continue Sentencing, where the government agreed with the guidelines calculations in the Presentence Report.

The government asserts that it has never given Mr. Neilson any assurance of probation and that it has never given the defendant any reason whatsoever to believe that it was willing to even consider, let alone agree to, probation in his case. Defendant has not cited any evidence to the contrary. Therefore, it must be concluded that the defendant entered his guilty plea knowing that prison time was a possibility, if not a likelihood.

The defendant fails to offer any evidence for his unsubstantiated claim that his plea was coerced by his own counsel and was therefore involuntary. In paragraph 5 of his Affidavit the defendant states: "It was not a voluntary plea bargain in that I did not want to change my plea. I felt pressured and coerced by my attorneys to do it, and at the time, due to my health problems, was not feeling strong enough to go through a trial." These conclusory statements lack any specifics and are without any support in the record. At the change of plea hearing the Court was very careful to examine the defendant's state of mind, his voluntariness, and his capacity to enter a guilty plea.

> THE COURT: Mr. Neilson, has anyone threatened you or tried to force you to plead guilty or to enter into the plea agreement?
>
> THE WITNESS: Not that I'm aware of.
>
> THE COURT: Has anyone promised you something that is not contained in the plea agreement?
>
> THE WITNESS: No.
>
> THE COURT: Mr. Neilson, have you had an adequate opportunity to discuss the charges against you that were brought by the government as well as your case, in general, with Mr. Cramer, your attorney, as well as Mr. Killpack and Mr. Wilson representing you here today?
>
> THE WITNESS: Enough to adequately perform this plea agreement.
>
> THE COURT: Are you satisfied with the representation that you have received by those counsel?
>
> THE WITNESS: I am.

> THE COURT: Mr. Neilson, do you understand that you cannot be forced to plead guilty here today?
>
> THE WITNESS: I do.

Tr., p. 5

The Court then proceeded to clarify the rights waived when entering a guilty plea and assured itself that the defendant understood the charges against him. In the course of this colloquy, the defendant reiterated: "I'd rather just do the plea agreement as it's laid out here and what we've hashed out because it's accurate." Tr., p. 8. Finally, the following occurred at the end of the hearing:

> THE COURT: Mr. Neilson, are you pleading guilty voluntarily and of your own free will?
>
> THE WITNESS: Yes.
>
> THE COURT: It is the finding of the Court in the case of the United States of America vs. Kenneth James Neilson that the defendant is competent and capable of entering an informed plea, that his plea is entered knowingly and voluntarily, that he knows his rights and he has waived those rights, that he is aware of the nature of the charges against him and the consequences of the plea, and that the plea is supported by an independent basis in fact containing the essential elements of the offense. The plea is therefore accepted and the defendant is adjudged guilty of the crime pleaded to.

Tr., pp. 18-19.

At the change of plea hearing the defendant also assured the Court that he had no physical or mental disabilities that would interfere with his ability to understand what was happening and think clearly. Tr., p. 4-5. Although he said he had been in the care of doctors relating to an automobile accident five months earlier, the defendant said he was not under the influence of any drugs and his mind was clear. *Id.* at 5.

Finally, even if the defendant believed he was not feeling strong enough to go through a trial and that was a factor he considered in deciding to enter his plea, as he asserts in paragraph 5 of his Affidavit, that could not have had a bearing on the voluntariness of his plea. At most it was a part of the judgment he made when making the decision to change his plea. However, the fact that he said nothing about this during the change of plea hearing and raises it now for the first time casts grave doubt on whether it played a role in his plea decision at all.

The record supports the Court's finding that the defendant's guilty plea was not coerced and was entered knowingly, intelligently, and voluntarily. He received substantial benefits by entering his plea. His contrary assertion now, seven months later, is the product of convenience and hindsight and, absent any support in the record, provides no fair and just reason for withdrawal of his guilty plea.

Finally, no evidentiary hearing is required on the Motion to Withdraw, because the defendant's allegations contradict the record, are inherently incredible, or are simply conclusory. This was the holding in *United States v. Carter* 109 Fed.Appx. 296, 299 (10th Cir. 2004):

> A defendant is not entitled to an evidentiary hearing as a matter of right whenever he seeks to withdraw his guilty plea . . . . The defendant must present some significant questions concerning the voluntariness or general validity of the plea to justify an evidentiary hearing. No hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory. (Citations omitted)

See also *United States v. Hernandez,* 277 Fed.Appx. 775, 777 (10th Cir. 2008). In the present case the defendant has not requested a hearing. Even if he did, his unsupported and conclusory assertions are so entirely contradicted by the record that no hearing need be conducted.

11

## CONCLUSION

At the change of plea hearing the Court meticulously explained the terms of the plea agreement, including possible sentencing calculations, carefully reviewed the rights being waived by the defendant, obtained convincing responses from the defendant that he understood the charges against him and that his plea was knowing and voluntary and not the product of coercion, misunderstanding, or mistake, and determined that the defendants' own statement under oath describing the crime which he committed was sufficient to satisfy the elements of the offense that the government would have to prove at trial. The defendant's current misgivings arose only after he found that the draft Presentence Report calculated a guidelines range beyond what he had apparently hoped for. Under these circumstances the defendant has failed to establish any fair and just reason for withdrawal of his guilty plea. All seven factors of the *Gordon* test weigh against the Motion to Withdraw and the motion should be denied.

## **RECOMMENDATION**

Based upon the foregoing analysis, IT IS HEREBY RECOMMENDED that defendant's Motion to Withdraw Guilty Plea and Continue Sentencing be DENIED.

Copies of the foregoing Report and Recommendation are being delivered to the parties who are hereby noticed of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation with the clerk of the District Court, pursuant to 28 U.S.C. § 636(b) within 14 days of receiving it. Failure to file objections to both factual and legal findings may constitute a waiver of those objections on subsequent

appellate review.

       DATED: November 21, 2011.

                 BY THE COURT:

                 _____
                 ROBERT T. BRAITHWAITE
                 U.S. Magistrate Judge